**Gerald VANDERFORD, Plaintiff,**

**v.**

**James A. PENIX, Jr., Individually and Penix and Taylor, Attorneys at Law, Defendants.**

No. 91–5119.

United States District Court, W.D. Arkansas, Fayetteville Division.

Jan. 31, 1994.

Charles L. Stutte, Fayetteville, AR, for plaintiff.

Walter B. Cox and Tim Howell, Davis, Cox & Wright, Fayetteville, AR, for defendants.

## ORDER

HENDREN, District Judge.

NOW on this 28th day of January, 1994, comes on for consideration defendants' Alternative motion for Judgment as a Matter of Law, Motion for New Trial and Motion for Remittitur.

Trial in this matter was held beginning on Monday, April 26, 1993. After a three (3) day trial, the jury returned a general verdict in favor of the plaintiff in the amount of $95,000.00. An order was entered pursuant to the jury's verdict on May 10, 1993.

As defendants indicate, the standard for considering a motion for judgment as a matter of law is set forth in *White v. Pence*, 961 F.2d 776 (8th Cir.1992):

> the question is a legal one, whether there is sufficient evidence to support a jury verdict. This Court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. (citations omitted). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. (citations omitted).

*Id.* at 779.

This legal malpractice case arose as a result of actions that occurred in a lawsuit filed before the Honorable Garrett Thomas Eisele. In that action, Gerald Vanderford ("Vanderford") was represented by James A. Penix, Jr. Vanderford sued Polly Davis and Alex Davis ("Davis") and H.T. Tommy Holt ("Holt"), asserting various causes of action. In his Order dated January 31, 1991, Judge Eisele referred to the complaint as "disorganized and difficult to follow." He summarized the claims as follows:

> As the Court understands it, plaintiff's allegations against Polly Davis include (1) breach of an "oral agreement to reconstitute between plaintiff, separate defendant,

Polly Dortch Davis, and Emery Hughes" which created a "a valid contractual relationship and business expectancy on behalf of plaintiff Gerald Vanderford," Complaint at para. 21; (2) entry into a conspiracy with "Holt and Hill Farms ... to intentionally and maliciously deprive plaintiff ... of his rightful' government benefits, which the Court views as an allegation of intentional interference with contractual rights; *id.* at para. 20;, *see Mid–South Beverages, Inc. v. Forrest City Grocery Co.,* 300 Ark. 204, 778 S.W.2d 218, 219 (1989); (3) intentional infliction of emotional distress 'or the tort of outrage' stemming from the conspiracy; *id.*; (4) breach of the 1985 lease agreement on the basis of the language in the lease providing for division of government benefits between landlord and tenant.

The Court notes the following allegations against defendant Holt from the complaint: (1) entry into a conspiracy with 'Holt and Hill Farms ... to intentionally and maliciously deprive plaintiff ... of his rightful' government benefits; (2) that Holt 'had knowledge of the contractual relationship and business expectancy created by the oral contract to reconstitute and intentionally interfered with such contract by inducing [Davis] to breach or terminate that relationship and expectancy.' *Id.* para. 21. Plaintiff seeks $750,000.00 in expectation damages and $3 million in punitive damages.

In the action before Judge Eisele, by Order dated January 31, 1991, Judge Eisele granted defendants' Motions for Summary Judgment, finding, *inter alia,* that no oral contract existed; that even if such agreement did exist, the statute of frauds barred such claim; that no conspiracy existed because Holt was unaware of Vanderford's existence at the relevant time; and that with respect to the breach of contract claim involving the 1985 lease agreement, neither party contemplated applying for and dividing government benefits in September of 1985.

In the case before this Court, plaintiff Vanderford contends that defendants were negligent in their representation of plaintiff on his claims against the Davises and Holt, and plaintiff sought damages as a result thereof.

In order for plaintiff to recover on his claim, the jury was instructed that plaintiff was required to prove each of the following three (3) propositions:

First, that he has sustained damages;

Second, that James Penix and Penix and Taylor were negligent;

Third, that had James Penix and Penix and Taylor not been negligent, Gerald Vanderford would have successfully recovered damages against Alex and Polly Davis or Tommy Holt in the underlying action for ASCS Government program benefits.[1]

Under *White,* the Court is required to analyze the evidence in the light most favorable to plaintiff, to determine whether, but for defendants'. negligence, plaintiff could have successfully recovered in the case against the Davises and Holt.

*Discussion*

1. *Oral Agreement Issue.*

■ With respect to the alleged oral agreement, defendant Penix testified that after the deposition of Vanderford, he no longer believed a case existed on the oral contract issue. Vanderford testified that Davis met with Emery Hughes and first agreed to "cut a lease with Hughes and plaintiff to get help in base," and that Davis then changed her mind and entered into a lease with Holt.[2] The Court understands this testimony to mean, as Judge Eisele concluded, that plaintiff alleges an oral agreement was made by Hughes and Davis to create a new farm to take advantage of the Davis base.

Judge Eisele specifically found there was no oral agreement between Vanderford, Emery Hughes, and the Davises to reconstitute

---

1. Plaintiff offered no objection to this instruction given by the Court, other than to insist that the Court should rule, as a matter of law, that defendants were "liable" and that the jury should only be asked to award damages.

2. In Judge Eisele's order, he defined "base" as a "high yield per acre."

their farms, and even if such an agreement did exist, it would have been unenforceable under the Statute of Frauds.

No evidence was presented to the jury in this case warranting an inference that the Statute of Frauds would not render any alleged oral agreement unenforceable, even assuming such an agreement existed.

### 2. *Cash Farm Lease Issue.*

■ On September 1, 1985, Polly Dortch Davis and Alex Davis entered into a four (4) year Cash Farm Lease agreement with plaintiff. As stated in Judge Eisele's Order which was entered into the record, the land leased to plaintiff was tract T–3057, one of six tracts comprising the Davis farm in Lonoke County, Arkansas. Judge Eisele also found:

> A local farmer named Mark Luebke raised crops on two tracts of the Davis Farm and minnows were raised on the remaining three tracts by H.T. Holt & Sons, d/b/a Holt Fish Farms.

> Tract T–3057, plaintiff's leased land, was composed of 350 acres "inside Bearskin Lake" in Lonoke County of which, 185.3 acres were designated as cropland. Exhibit A to Complaint at 1. At least 150 acres of the tract were dedicated to "Permanent Pasture." *Id.* An additional 90 acres was to be used for "Bermuda Turf for Cutting." Exhibit A to Defendants Davis' Motion for Summary Judgment at 1. (footnote omitted). The balance of the land, 110 acres, was either part of the lake property and hence underwater, or devoted to a pecan orchard and not available for any other cultivation leased from the Davises approximately 350 acres.

One of the provisions of the 1985 Cash Farm Lease Agreement provided:

> There is to be no row cropping. Any government benefits during this lease will be shared equally between Landlord and Tenant. There is a pecan orchard on the farm. ... Pecan crop is to be shared equally by landlord and tenant, after crop expenses, except pruning first year.

The proof indicated (as alluded to in Judge Eisele's order) that, under certain circumstances, farm land may be "reconstituted" in connection with the application for government benefits administered by the Agricultural Stabilization and Conservation Service ("ASCS").

As mentioned above, Judge Eisele specifically found that neither Vanderford nor Polly and Alex Davis contemplated applying for and dividing government benefits when they entered into the Cash Farm Lease Agreement. No proof was presented in this case to controvert that finding.

It further appears that, rather than entering into an agreement to reconstitute with the Hughes farm, Davis entered into an agreement with Holt to reconstitute Holt's farm with Davis' farm. Said agreement was approved by the ASCS. Plaintiff contested said reconstitution before the county, state and national ASCS administrators.

It is not disputed that the ASCS offices at the county, state and national levels each specifically found that plaintiff was not entitled to government program benefits during the years 1986–1989. However, ultimately, at the national ASCS administrative level, plaintiff and attorney Penix were successful in urging that the reconstitution of the Davis–Holt farms was improper and, therefore, invalid.

In the June 7, 1990 ruling by the national ASCS office, William Penn, Assistant Deputy Administrator, State and County Operations, advised plaintiff's counsel, Mr. Penix, as follows:

> This replies to the appeal filed on behalf of your client, Mr. Gerald Vanderford, concerning an Arkansas State ASC Committee determination in regard to the farm reconstitution and division of annual program payments involving Lonoke County farm K–217, owned by Ms. Polly Dortch Davis and combined in April 1987 with land operated by Holt and Hill Farms as farm 2261. Farm 2261 participated in the annual program for 1987, 1988 and 1989. Mr. Vanderford had a cash lease on a portion (tract 3057) of old farm K–217 effective for 1986 through 1989. The Arkansas State Committee determined your client was not entitled to any of the pro-

gram payments and denied the request for a retroactive farm reconstitution.

We appreciate the information you provided during the personal appearance hearing held here in Washington, D.C., on January 18, 1990. You and your client participated in the hearing in person and Mr. H.T. Holt, Jr., participated by telephone. We also appreciate the information provided in writing and by telephone prior and subsequent to the hearing.

Based on our review of the record we are directing the Arkansas State ASCS Office to have the Lonoke County ASCS Office properly reconstitute combined farm 2261 effective for 1987 and to report the results to this office. When the retroactive reconstitution has been completed and reviewed at this level, a final disposition of this matter will be made and you will be provided a copy of the same.

As you were advised during the hearing Mr. Vanderford is not entitled to share in the annual program payments that may have accrued to the Hill and Holt Farms' operation as a result of the 1987 farm combination. In addition to your client not having an approved contract (CCC-477, Contract To Participate In The (Year) Price Support And Production Adjustment Programs), the rules applicable to the division of the annual program payments provide that each producer on a farm will share in the payment in the same manner in which he or she shared in the program crop or would have shared in such program crop if produced. The record does not show that Mr. Vanderford produced any program crops on farm K-217 or 2261 or shared in the proceeds thereof. *Therefore, he is not entitled to receive any annual program benefits earned by old farm K-217 or the portion thereof that he had cash leased from Ms. Davis for 1986 through 1989.*

Thank you for bringing this whole matter to our attention.

(Emphasis added).

Thus, the national ASCS directed that a proper reconstitution take place, and also concluded that plaintiff was not entitled to share in the annual program payments that may have accrued to the Hill and Holt Farms' operation as a result of the 1987 farm combination. It also concluded that since plaintiff did not have an approved contract, and plaintiff had not produced any program crops on the farms in issue or shared in the proceeds thereof, he was not entitled to receive any annual program benefits earned by "old farm K-217 or the portion thereof that he had cash leased from Ms. Davis for 1986 through 1989."

Although it thus appears retroactive reconstitution was ordered by the ASCS, the evidence presented in the case at bar did not persuasively indicate that such reconstitution had taken place either during the pendency of the action before Judge Eisele or at the time of the trial in this case.

The only evidence that retroactive reconstitution under the 1985 Cash Farm Lease had taken place was the testimony of Robert Krueger, one of plaintiff's witnesses who was an attorney with an agricultural background. Krueger testified he *believed* he had seen a letter stating reconstitution had taken place. No written letter indicating such was ever introduced at trial. It was plaintiff's burden to prove this crucial fact and it seems obvious to the Court that had such a letter existed, it could have been produced or, at the least its existence confirmed and its absence explained.

Ron Meadors, an ASCS County Executive Director, did not know if the land covered by the Cash Farm Lease had been reconstituted but testified there was no way there could be a proper reconstitution without plaintiff being entitled to money. Mr. Meadors did not explain nor was the Court favored with any other evidence which would explain this latter dogmatic assertion which squarely contradicts William Penn's statement to the contrary in his June 7, 1990 letter to Mr. Penix as quoted above.

The Court believes the evidence on this issue is not susceptible of any reasonable inference sustaining the position of plaintiff that retroactive reconstitution pursuant to the directives of the national ASCS of the lands covered by the 1985 Cash Farm Lease

had, in fact, occurred and that plaintiff was entitled to money by reason thereof.

The Court observes that if the fact is that retroactive reconstitution of the lands covered by the 1985 Cash Farm Lease *has* occurred and plaintiff was entitled to but did not receive benefits, his proper remedy would appear to be to file suit against the ASCS or Commodity Credit Corporation ("CCC") within the applicable statute of limitations. If, on the other hand, the fact is that such retroactive reconstitution has *not* occurred, it would remain for plaintiff to pursue that administrative action rather than bring either the suit before Judge Eisele or the instant suit. It therefore follows that at the time the action was pending in Judge Eisele's court, as well as during the pendency of this action, a final determination as to whether plaintiff is entitled to any benefits under the retroactive reconstitution had not been made.

The Court recognizes the jury had before it evidence relating to Mr. Penix' dilatory conduct in his representation of plaintiff before Judge Eisele. The jury also had before it a copy of Judge Eisele's Order wherein he referred to such dilatory conduct as follows:

> The Court has carefully reviewed the file in this case. It is struck by a noticeable pattern of non-response by plaintiff's counsel to a variety of pleadings, correspondence and, most recently, an Order of this Court. The Court will not consider any late-filed pleading by plaintiff.

Judge Eisele then went through several specific instances of dilatory conduct by Mr. Penix. Finally, however, Judge Eisele concluded:

> Because plaintiff did not timely comply with this Court's Order of January 18, Defendants' statements of material facts as to which there is no genuine issue to be tried are hereby deemed admitted by plaintiff. *It is important to note this point although the result would be the same in this case even if the Court permitted the filing of plaintiff's response to the Rule 29 statement of facts.*

(Emphasis added).

Judge Eisele's statements undoubtedly support the conclusion that Mr. Penix was negligent in his representation of plaintiff. The proof presented to the jury in this case also supported that conclusion and the jury was clearly justified in so concluding. This Court not only concurs in that conclusion but would add that it deplores such conduct on the part of any attorney.

The Court must reluctantly, but properly, conclude that, irrespective of whether defendants were negligent, the evidence presented is not such that a jury could properly conclude plaintiff would have been successful in the underlying action before Judge Eisele.

It is therefore clear that there was sufficient evidence before the jury to support a finding that defendants were negligent—as was required by the second proposition set out in the Court's jury instructions.

It is also clear, in the Court's opinion, that there was *not* sufficient evidence before the jury to support a finding that, had defendants not been negligent, plaintiff would have successfully recovered damages against Alex and Polly Davis or Tommy Holt in the underlying action which defendants brought for plaintiff in Judge Eisele's Court—as was required by the third proposition set out in the Court's jury instructions.

Finally, and *not* as clearly in the Court's view, it is questionable whether there was sufficient evidence before the jury to support a finding that plaintiff has sustained damages by reason of defendants' negligence in the handling of the underlying action. As noted above, the evidence is susceptible to the interpretation(s) that plaintiff had no right to governmental benefits; that any such right could have been (and perhaps still can be) asserted and such benefits collected through administrative procedures available to plaintiff; and that any such right could *not* have been (and still cannot be) properly asserted and such benefits collected through the filing of the underlying lawsuit before Judge Eisele or through the suit in the case at bar.

Based upon the foregoing, the Court hereby finds defendants' Motion for Judgment as a Matter of Law should be, and is hereby granted. The judgment heretofore entered pursuant to the jury's verdict is vacated and

plaintiff's complaint is dismissed, with prejudice.

IT IS SO ORDERED.